Richard B. Teitelman, Judge
The Office of Chief Disciplinary Counsel (OCDC), filed an information charging Joel Eisenstein with several violations of the Rules of Professional Responsibility. A disciplinary hearing panel (DHP) found that Mr. Eisenstein violated Rules 4-8.4(c), 4-8.4(d), 4-3.4(a) and 4r-4.4(a) by using illegally-obtained evidence, including the work product of opposing counsel. The DHP recommended an indefinite suspension with no leave to apply for reinstatement for 12 months. Mr. Eisenstein -rejected the recommended discipline. This Court finds that Mr. Eisenstein violated the rules as determined by the DHP and orders that he be suspended indefinitely with no leave to reapply for reinstatement for six months.

Facts

Mr. Eisenstein was licensed as an attorney in Missouri in 1974. Mr. Eisenstein’s license has been disciplined on five prior occasions. In 1991 and again in 1999, Mr. Eisenstein was admonished for violating Rule 4-3.5(b) by engaging in ex parte communications with the judge. In 1997, this *761 Court suspended Mr. Eisenstein after he pleaded guilty to a federal misdemeanor for willfully failing to file an income tax return. In 2001, ■ Mr. Eisenstein was- admonished for violating Rule 4-8.1(b)’by failing to respond to the OCDC’s request for information regarding an ethics complaint. Finally, in 2004, • Mr. Eisenstein was admonished for violating Rule 4—3.3(d) for failing to inform the court of material facts relevant to a pending issue.
The present disciplinary matter involves Mr. Eisenstein’s representation of his client (Hüsband) in an action to dissolve Husband’s marriage to Wife. Attorney Stephanie Jones represented Wife. On-multiple occasions,. Husband accessed Wife’s personal e-mail account without, her permission. Mr. Husband obtained Wife’s most current payroll documents and a list of direct examination questions Ms. Jones had e-mailed to Wife in preparation for trial. In November 2013, Husband delivered the payroll, documents, and list of direct examination questions to Mr. Eisenstein.
On February 11,2014, the second- day of trial, Mr. Eisenstein handed Ms. Jones a stack of exhibits that included Ms. Jones’ direct examination questions. Prior to this time, neither Ms. Jones nor Wife was aware that Husband had improperly accessed Wife’s e-mail account and delivered the information to Mr. Eisenstein. Ms. Jones requested a conference with the trial judge and a hearing on the record.
At the hearing, Husband admitted that he improperly accessed Wife’s personal email account and obtained the list of direct examination questions and the payroll information. Husband admitted that he made notes on the list and delivered.the documents to Mr. Eisenstein.
Ms. Jones also questioned Mr. Eisenstein on the record. Mr. Eisenstein admitted that he had viewed the information improperly obtained by Husband and that he did not immediately disclose his receipt of this information to Ms., Jones:
Q. And you said you were going to object to all of my leading questions that are contained in the outline?
A. Well I was teasing you, counsel, I haven’t read—
Q. Did you say that or not?
A. I teasingly said that to you, yes I did.
Q. So you said that? •
A. I told you that I had read the—that at some, point in tíme I had read the first portion of that and realized that it was verboten, it was something that I should not have. - • '
■ Q. But you never came to me and said I have your outline, however, you came to be in possession of it, did you?
A. No, I didn’t counsel. I handed it to you this morning.
Q. Thank you.
On February 14, 2014, Mr. Eisenstein sent the following e-mail to Ms. Jones:
Rumor has it that you are quite the gossip regarding our little spat in court. Be careful what you say. I’m not someone you really want to make a lifelong enemy of, even though you are off to a pretty good start. Joel.
The OCDC filed an Information charging Mr. Eisenstein with violating Rules 4-4.4(a) for using methods of obtaining evidence in violation of the rights of a third person; 4-8.4(c) and (d) for reviewing and using improperly obtained evidence; 4-3.4(a) for unlawfully concealing a document having evidentiary value; and 4-3.3(a) for misrepresenting facts’ to a tribunal. The DHP held a hearing and determined that Mr; Eisenstein violated Rules 4-4.4(a); 4-8.4(c) and (d), and 4-3.4(a). In addition to possessing Ms. Jones’ direct examination *762 questions, the DHP also found, based, on Ms. Jones’ testimony, that Mr. Eisenstein had used the improperly obtained payroll information during a pre-trial settlement conference. The DHP recommended an indefinite suspension with no leave to apply for reinstatement for 12 months. Mr. Eisenstein rejected this recommendation. This Court has jurisdiction pursuant to its inherent power to regulate the practice of law.

Standard of Review

The DHP’s findings of fact, conclusions of law, and recommendations are advisory, and this Court may reject any or all of the DHP’s recommendations. In re Coleman, 295 S.W.3d 857, 863 (Mo. banc 2009). “Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed.” In re Farris, 472 S.W.3d 549, 557 (Mo. banc 2015). “This Court decides the facts de novo, ‘independently determining all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law.’ ” Id. quoting In re Snyder, 35 S.W.3d 380, 382 (Mo. banc 2000).

Rule 4~4.4(a)

The information alleged that Mr. Eisenstein violated Rule 4~4.4(a) by utilizing the payroll information and list of direct examination questions that were improperly procured by Husband. Rule 4-4.4(a) prohibits a lawyer from using “methods of obtaining evidence that violate the legal rights” of a third party. Comment 1 to Rule 4-4.4(a) specifically notes that the rule is intended to prevent “unwarranted intrusions into privileged relationships, such as the client-lawyer relationship.”
The preponderance of the evidence supports a finding that Mr. Eisenstein violated Rule 4-4.4(a). Ms. Jones testified credibly that Mr. Eisenstein had referenced information from Wife’s payroll documents during pretrial settlement negotiations. Further, Mr. Eisenstein admitted that he reviewed the information provided by Husband, realized it was “verboten,” and did not immediately disclose his receipt of the information to opposing counsel. Mr. Eisenstein’s failure to promptly disclose his receipt of the information and return it to Ms. Jones until after the trial had commenced supports a finding that Mr. Eisenstein utilized Husband’s improper acquisition of Wife’s personal- information, including privileged attorney client communications.
Mr. Eisenstein argues that he did not use improper means to obtain the evidence because it was Husband who obtained the information. The fact that Husband obtained the information does not negate the fact that Mr. Eisenstein received the information, realized it was “verboten,” and then failed to disclose his receipt of that information until the second day of trial. The comment accompanying Rule 4-4.4(a) recognizes that lawyers “sometimes receive documents that were mistakenly sent or procured by opposing parties or lawyers.” However, when a lawyer knows that he or she has improperly received information, “Rule 4-4.4 requires the lawyer to promptly notify the sender in order to permit that person to take protective measures.” In this case, Rule 4-4.4 required Mr. Eisenstein to promptly disclose his receipt of the information to Ms. Jones so that appropriate protective measures could be undertaken. Mr. Eisenstein did not do so.
Mr. Eisenstein also argues that he immediately disclosed his receipt of the information. Mr. Eisenstein asserts that when he testified in chambers that he had realized “at some point in time” that the information was “verboten,” he was explaining *763 that he had just realized that the information was improperly obtained. If Mr. Eisenstein had just discovered the source of the information minutes before his in-chambers testimony, he could have so stated. The DHP did not find Mr. Eisenstein’s explanation credible and neither does this Court. Mr. Eisenstein violated Rule 4-4.4(a).

Rule 4-8.4(c)

Rule 4—8.4(c) prohibits a lawyer from engaging “in conduct involving dishonesty, fraud, deceit, or misrepresentation.” Mr. Eisenstein’s violation of Rule 4-4.4(a) by obtaining evidence procured through improper means and failing to immediately disclose the same to opposing counsel demonstrates a violation of Rule 4-8.4(c).

Rule 4-3.4(a)

Rule 4-3.4(a) provides, in part, that a lawyer shall not “unlawfully obstruct another party’s access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential eviden-tiary value.” Mr. Eisenstein violated Ruíe 4-3.4(a) by concealing his possession of Wife’s payroll information and Ms. Jones’ direct examination questions until the second day of trial.

Rule 4-8.4(d)

The information alleged that Mr. Eisenstein violated Rule 4-8,4(d) by sending a threatening e-mail to Ms. Jones. Rule 4-8.4(d) prohibits a lawyer from engaging “in conduct that is prejudicial to the administration of justice.” Mr. Eisenstein’s e-mail to Ms. Jones clearly implied that Ms. Jones would suffer professional retribution if she further discussed the issue. Threatening opposing counsel during the course of litigation or to avoid an ethics complaint constitutes conduct prejudicial to the administration of justice. Mr. Eisenstein’s conduct violated Rule 4-8.4(d).

Suspension is the Appropriate Discipline

The purpose of attorney disciplinary proceedings is “to protect the public and maintain the integrity of the legal profession.” In re Ehler, 319 S.W.3d 442, 451 (Mo. banc 2010). When imposing discipline, this Court considers the ethical duty violated, the lawyer’s mental state, the extent of actual or potential injury caused by the attorney’s misconduct, and any aggravating or mitigation factors. Id, The ABA Standards for Imposing Lawyer Sanctions (1991) provide guidance for assessing the appropriate discipline. Id. at 451-52.
ABA Standard 6.12 provides that “suspension is generally appropriate when a lawyer knows that tnaterial information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.” ABA Standards 6.1 and 6.12 provide that suspension is appropriate when the case involves “conduct that is prejudicial to the • administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to the court.” In re Madison, 282 S.W.3d 350, 361 (Mo. banc 2009).
According to the ABA Standards, “knowledge” is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or. purpose to accomplish a particular result. ABA Standards Definitions, p. 17. Mr. Eisenstein admitted that he reviewed the information and concluded that it was “verboten.” Yet Mr. Eisenstein did not disclose his discovery of the improper evidence to Ms. Jones. Mr. Eisenstein’s recognition that he should not have posses *764 sion of the information and his decision to not disclose his receipt of that information demonstrate that he acted knowingly. Mr. Eisenstein’s retention and use of the improperly obtained evidence warrants a suspension.
Although suspension is the presumptive discipline, the Court must consider mitigating and aggravating circumstances before ' determining whether to depart from this discipline in a particular case. In re Belz, 258 S.W.3d 38, 42 (Mo.2008). Mitigating factors do not constitute a defense to a finding of misconduct but may justify a downward departure from the presumptively proper discipline. Ehler, 319 S.W.3d at 452. Similarly, aggravating circumstances may justify a level of discipline greater than the presumed discipline or confirm that the presumed discipline is appropriate for the particular case,
Mr. Eisenstein asserts that any discipline should be mitigated by his lack ’of a dishonest or 'selfish motive." The ABA Standards indicate that a suspension is warranted where the lawyer' knowingly and improperly withholds information. ' The lack of a dishonest or selfish motive is not dispositive. As established, the preponderance of the evidence demonstrates that Mr.'Eisenstein knowingly retained the improperly obtained evidence and did not promptly disclose his receipt of that information so that protective measures could be employed.
Mr. Eisenstein also asserts that he suffers from, post-traumatic distress syndrome due to his military service in Vietnam. Mr. Eisenstein does not elaborate on how this past military service in any way excuses the-professional misconduct in this case. There are no mitigating factors.
Mr. Eisenstein’s four prior admonitions and previous suspension are aggravating factors. Mr. Eisenstein’s prior disciplinary history, considered with the violations in this case, warrant a suspension with no leave to apply for reinstatement for six months.

Conclusión

' Mr. Eisenstein is suspended indefinitely with no leave to" reapply for six months. Reinstatement will be conditioned on meeting the requirements for readmission set'out in this Court’s rules.
Breckenridge, C.J., Stith, Draper and Russell, JJ., concur; Fischer, J., dissents in separate opinion filed; Wilson, J., concurs in opinion of Fischer, J.; Wilson, J., dissents in separate opinion filed; Fischer, J., concurs in opinion of Wilson, J.