**In re Renae EHLER, Respondent.**

**No. SC 90652.**

Supreme Court of Missouri,
En Banc.

Aug. 31, 2010.

Alan D. Pratzel, Chief Disciplinary Counsel, Jefferson City, pro se.

Ehler, Keytesville, pro se.

PATRICIA BRECKENRIDGE, Judge.

The Office of Chief Disciplinary Counsel (OCDC) seeks to discipline the law license of Renae Lynn Ehler for multiple violations of the rules of professional conduct in her representation of a client in a dissolution proceeding and another client in an unrelated civil case. The preponderance of the evidence proves Ms. Ehler violated Rule 4–1.1, Competence, by failing to correctly calculate and deliver the amount of money owed to a client and an opposing party and by failing to provide opposing counsel with requested discovery information to avoid a default judgment against her client; Rule 4–1.3, Diligence, by failing to pay money owed to a client and an opposing party in a timely fashion and by failing to provide opposing counsel with discovery information to avoid a default judgment against her client; Rule 4–1.4, Communication, by failing to communicate with clients and opposing counsel; Rule 4–1.15, Safekeeping Property, by misappropriating and mishandling client funds and by failing to properly maintain a client trust account; and Rule 4–8.4, Misconduct, by violating other rules of professional

conduct and by engaging in conduct involving deceit and misrepresentation.[1]

The Court previously suspended Ms. Ehler's license for six months for prior violations of the rules of professional conduct that were of the same nature as her current violations. It stayed her suspension and imposed a two-year term of probation. She committed some of the current acts of professional misconduct while she was on probation. The effort to educate Ms. Ehler and assist her in modifying her professional behavior to comply with the rules of professional conduct has failed. In light of the severity of her acts of misconduct and this Court's progressive application of discipline, disbarment is appropriate. Therefore, Ms. Ehler is disbarred.

## Factual and Procedural Background

Ms. Ehler was licensed to practice law in Missouri in October 1997. In October 2005, this Court disciplined Ms. Ehler for the following rule violations: [2]

- Rule 4–1.3, Diligence, for failing to act on behalf of clients and failing to return money owed to them in a timely fashion after express request by clients;
- Rule 4–1.4, Communication, for failing to communicate with clients regarding their cases' status;
- Rule 4–1.15, Safekeeping Property, by failing to properly maintain a client trust account and failing to deliver money when due;

- Rule 4–1.16, Declining or Terminating Representation, for failing to refund unearned fees and unused costs to former clients in a timely manner following withdrawal from representation.
- Rule 4–8.1, Bar Disciplinary Matters, for failing to reasonably respond to the OCDC.

The Court suspended her license for six months but stayed that suspension and placed her on probation for a term of two years. As a condition of her probation, Ms. Ehler was required to consult with a practicing attorney from Columbia who was a law office practice management consultant. That attorney worked with her regularly over the two-year period on how to handle her office practices and manage her client trust account. The probation terms also required her to consult with a Moberly attorney who served as a mentor for Ms. Ehler. Ms. Ehler's term of probation ended January 28, 2008.

The present disciplinary action arises out of complaints regarding Ms. Ehler's representation of R.K. in a dissolution proceeding and her representation of C.G. in a lawsuit for unpaid water bills.

*The Dissolution*

In 2007, R.K. hired Ms. Ehler to represent her in a dissolution action against H.M. Ms. Ehler filed the dissolution action as counsel for R.K. Another attorney represented H.M.

The parties reached a settlement on the day the dissolution was to be tried, January 16, 2008, and that settlement was ap-

---

1. Ms. Ehler's current violations of the rules of professional conduct all occurred before December 31, 2008. Ms. Ehler's trust account violations occurred from January 2007 to December 2008, so they are governed by the version of Rule 4–1.15 in effect from January 1, 2007, to December 31, 2008. Therefore, unless otherwise indicated, all citations are to the 2009 Missouri Supreme Court Rules and Rules of Professional Conduct, which contain the text of the rules in effect at the time of Ms. Ehler's conduct. The subsequent amendments to the rules do not change the essence of the rules.

2. The 2005 Missouri Supreme Court Rules and Rules of Professional Conduct applied to this disciplinary action.

proved by the trial court after a hearing that day. As part of the settlement, the couple's real and personal property was to be sold and the net proceeds divided equally between the parties after the payment of all debts. The court also ordered that R.K.'s name be changed. Ms. Ehler was to receive the proceeds of the sales of property, pay the parties' debts and then distribute the net proceeds to them. She also was to file a proposed dissolution decree.

R.K. expected to receive her dissolution decree within six weeks. When she did not receive it, she repeatedly called Ms. Ehler to inquire about the delay. Finally, R.K. obtained the assistance of Bobby Wheeler, another lawyer, and he took her over to the courthouse to get a copy of the decree. It had not been filed. The proposed dissolution decree was filed only after the court issued an order to Ms. Ehler to appear and show cause why she should not be held in contempt for failure to provide the proposed judgment. After the dissolution decree was filed, Mr. Wheeler procured a copy for R.K. It contained a scrivener's error; it misstated R.K.'s first name. Mr. Wheeler filed a motion to correct the judgment, and the corrected judgment was issued July 10, 2008, almost seven months after the hearing at which the court approved the settlement and directed Ms. Ehler to file the proposed dissolution decree.

Following the dissolution settlement, Ms. Ehler received several checks from the sales of the marital property and income tax refunds and deposited the checks into her trust account. On February 19, 2008, she deposited into the trust account two federal income tax refund checks totaling $1,225.63. On June 6, 2008, she deposited a check in the amount of $52,481.22 for the net proceeds from the sale of marital real property. On July 7, 2008, she deposited a check in the amount of $13,832.66 for the net proceeds from the sale of the marital personal property. The sum total of those checks is $67,539.51.

On June 25, 2008, Ms. Ehler sent a letter to H.M.'s attorney outlining her distribution plan for the marital assets. She listed several creditors, including herself for attorney's fees, who needed to be paid before any money could be distributed to the parties. The sum total of the debt was $18,380.41, although Ms. Ehler's letter erroneously listed the amount as $18,636.64. In July 2008, Ms. Ehler paid herself and the creditors.

At this point, the remaining balance should have been $49,159.10 for equal distribution to H.M. and R.K. However, during the dissolution proceeding, H.M. and R.K. each paid bills to creditors. Because of the difference in payment, R.K. should have received $24,782.31 from the net proceeds and H.M. should have received $24,376.79. In September 2008, Ms. Ehler mailed a $20,460.44 check to R.K. H.M. did not receive his portion of the proceeds. H.M.'s attorney repeatedly contacted Ms. Ehler in an effort to acquire his client's money. As of January 29, 2009, Ms. Ehler still owed R.K. $4,321.87 and H.M. $24,376.79.

R.K. recognized a discrepancy between the amount she received and the amount she was owed. She contacted Ms. Ehler and requested an accounting of the parties' marital funds. Ms. Ehler never provided R.K. with the requested accounting. R.K. then filed a complaint with the OCDC.

*The C.G. Representation*

C.G. and his wife, D.G., hired Ms. Ehler to represent C.G. in the defense of a lawsuit involving a claim for unpaid water

bills.[3] C.G. wished to assert the defense that he had not lived at the property where the water bills had been generated during the relevant time period because he was living in Iowa at the time. C.G. had his wife, D.G., deliver to Ms. Ehler his employment and tax records, his son's school records, and rental receipts as documentary evidence that he had lived in Iowa during the relevant time period for which the water bills were generated. After Ms. Ehler received the documents, C.G.'s only contact with her was a telephone conversation when she told him a court date had been continued and that she would contact him with the new court date.

Prior to that time, Ms. Ehler told C.G. that the opposing party had interrogatories he needed to answer and read the questions to him over the phone. He told her he easily could answer the questions, and it was agreed that Ms. Ehler would send the interrogatories to him that he was required to complete. She never did so.

Ms. Ehler appeared in court July 28, 2008, to respond to a motion filed by the plaintiff water district seeking sanctions for C.G.'s failure to respond to its discovery requests. In court, Ms. Ehler did not use the documentary evidence received from C.G. Ms. Ehler told the court C.G. had not provided her with the information necessary to respond to the interrogatories. As a sanction for failing to comply with discovery requests, the court entered a judgment by default against C.G. in the amount of $1,900. C.G. did not appear for the hearing when the motion for sanctions was heard because he did not know that the motion had been filed or that there was a court date. Additionally, Ms. Ehler did not inform C.G. of the default judg-

ment entered against him, and he found out about the judgment through a Case.net search conducted by his wife. As a result of the default judgment, C.G.'s wages were garnished and his credit rating was damaged. C.G. filed a complaint against Ms. Ehler with the OCDC.

*OCDC Investigation*

After receiving complaints from R.K. and C.G., the OCDC investigated Ms. Ehler's law practices and audited her trust account for 2007–2008. The audit revealed Ms. Ehler made 12 payments for her personal and office utility bills out of the trust account. In 2007, there were over $2,000 in utility payments withdrawn from the account. In 2008, $1,120.20 was withdrawn from the account. As of January 29, 2009, Ms. Ehler's trust account balance was $26,847.58; $253.74 of that amount was subject to an IOLTA lien. The trust account balance was $2,104.82 less than the amount due to H.M. and R.K.

After the audit, the OCDC directed Ms. Ehler to pay H.M. and R.K. the balance owed to them. The OCDC staff went with Ms. Ehler to her bank, where she obtained a cashier's check made payable to R.K. for $3,066.70 and a cashier's check made paying to H.M. for $23,527.14. She still owes H.M. and R.K. $2,104.82.

The OCDC filed an information against Ms. Ehler. A disciplinary panel heard the matter and, on November 12, 2009, found R.K., H.M., and C.G. to be credible witnesses. In regard to R.K.'s complaint, the panel found Ms. Ehler violated the following rules of professional conduct:

- Rule 4–1.1, Competence, by failing to correctly calculate the money owed to H.M. and R.K. and by failing to deliver the correct amount to them;

---

**3.** C.G. currently is married to D.G. C.G. was married to V. at the times relevant to the water bill dispute.

- Rule 4–1.3, Diligence, by failing to timely deliver the money owed to H.M. and R.K.;

- Rule 4–1.4, Communication, by failing to communicate with R.K. about the money owed and by failing to communicate with H.M. and his attorney about the money owed;

- Rule 4–1.15, Safekeeping Property, by failing to properly maintain a client trust account and failing to deliver funds to H.M. and R.K., and, instead, utilizing portions of that money for other purposes;

- Rule 4–8.4, Misconduct, by engaging in conduct involving deceit and misrepresentation.

In regard to C.G.'s complaint, the panel found Ms. Ehler violated the following rules of professional conduct:

- Rule 4–1.1, Competence, by failing to provide to opposing counsel the information requested in discovery so as to avoid a judgment against her clients;

- Rule 4–1.3, Diligence, by failing to provide to opposing counsel the information requested in discovery so as to avoid a judgment against her clients.

The panel found that aggravating factors were present, including a prior disciplinary offense, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and an indifference to making restitution. It also found the presence of mitigating factors, including Ms. Ehler's personal and emotional problems due to her ongoing divorce and her cooperation with the OCDC in the proceedings. The panel recommended disbarment.

Ms. Ehler filed her rejection of the panel's recommendation, which brings the matter before this Court.

## Standard of Review

"Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed." *In re Crews*, 159 S.W.3d 355, 358 (Mo. banc 2005). This Court reviews the evidence *de novo*, independently determines all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law. *In re Belz*, 258 S.W.3d 38, 41 (Mo. banc 2008). The panel's findings of fact, conclusions of law, and the recommendations are advisory and, this Court may reject any or all of the panel's recommendations. *In re Coleman*, 295 S.W.3d 857, 863 (Mo. banc 2009).

## Violation of Rule 4–1.1 Competence

Rule 4–1.1 requires a lawyer to represent a client competently. Competent representation includes "the legal knowledge, skill, thoroughness, and preparation reasonably necessary to complete the representation." *Crews*, 159 S.W.3d at 359. Ms. Ehler's conduct in R.K.'s dissolution and her representation of C.G. demonstrates a lack of competence for which discipline is appropriate.

The evidence shows Ms. Ehler has violated rule 4–1.1 by failing to correctly calculate the money owed to H.M. and R.K. and by failing to deliver the correct amount to them from the proceeds of their sale of marital property. After selling the couples' marital property, Ms. Ehler was directed by the circuit court to collect the proceeds of the sale and appropriately dispense the proceeds. Ms. Ehler's failure to properly calculate the amount due the parties and then disperse the proper amount to the parties was incompetent representation of R.K. by Ms. Ehler.

Ms. Ehler claims that no one ever suggested that her calculations were incorrect and that, if anyone did, she would have checked her calculations and made the cor-

rection. This claim is directly contradicted by R.K.'s testimony that she noticed a discrepancy in the amount paid to her and requested an accounting from Ms. Ehler, which Ms. Ehler failed to give her.

In regard to C.G.'s representation, Ms. Ehler's actions also show incompetence. Ms. Ehler failed to give C.G. the interrogatories that he was required to complete and return to opposing counsel. Her incompetence caused a default judgment to be entered against C.G. Ms. Ehler incompetently represented C.G.

### Violation of Rule 4–1.3 Diligence

■ Rule 4–1.3 states, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Ms. Ehler failed to timely deliver the money owed to H.M. and R.K., thereby violating Rule 4–1.3. In July 2008, Ms. Ehler's client trust account contained a substantial amount of money that belonged to R.K. and H.M. Ms. Ehler presented R.K. with a check for the incorrect amount in September 2008. H.M. was not paid his portion of the proceeds until the OCDC directed Ms. Ehler to pay him in January 2009. The untimely delivery of client funds shows Ms. Ehler's lack of diligence and amounts to a violation of Rule 4–1.3.

The diligent representation of a client is particularly important because "[a] client's interests often can be adversely affected by the passage of time or the change of conditions[.]" Rule 4–1.3, comment 3. In some instances, "the client's legal position may be destroyed." *Id.* Ms. Ehler's lack of diligence caused C.G. to lose the ability to defend against the lawsuit. Her failure to give the interrogatories to C.G. denied him the opportunity to put forth a defense. Her conduct "destroyed" C.G.'s legal position. By failing to provide opposing counsel with discovery, C.G. was not allowed to present what may have been a meritorious

defense, and a default judgment was entered against him as a sanction pursuant to Rule 61.01(b)(1). Ms. Ehler's representation of C.G. and her handling of R.K.'s dissolution show a lack of diligence and violate Rule 4–1.3.

### Violation of Rule 4–1.4

■ Communication with a client is essential to maintain a productive attorney-client relationship. Rule 4–1.4 requires a lawyer to keep a client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information. Ms. Ehler violated this rule throughout her representation of R.K.

R.K. repeatedly contacted Ms. Ehler seeking information about her dissolution decree. She also repeatedly requested information about the sale of the marital property and when she would be receiving her portion of the proceeds. Ms. Ehler also failed to communicate with H.M.'s lawyer when he inquired about the proceeds from the marital property sales. "When a client makes a reasonable request for information, Rule 4–1.4[ ] requires prompt compliance with the request...." Rule 4–1.4, comment 4. When a prompt response is not feasible, the attorney or the attorney's support staff must acknowledge the information request and inform the client when he or she can expect a thoughtful response. *Id.* Ms. Ehler has violated Rule 4–1.4.

### Violation of Rule 4–1.15

■ The OCDC alleges Ms. Ehler has violated Rule 4–1.15, Safekeeping Property, by failing to properly maintain a client trust account, failing to deliver funds to H.M. and R.K. and, instead, utilizing portions of that money for her own purposes. Rule 4–1.15(c) requires a lawyer to keep all client property or third-party property in the lawyer's possession separate from

the lawyer's own property. This rule also requires that complete records of the client trust account be maintained and preserved for a period of at least five years, and an accounting must be completed promptly on a client's request. Additionally, Rule 4–1.15(f) requires a lawyer, on receipt of client funds, to promptly notify the client and deliver the funds to the client.[4]

The evidence shows that Ms. Ehler failed to properly maintain her client trust account. She admits to not regularly balancing her trust account. She admits she lost all of her financial records because of a crashed computer hard drive and that, during her probation, the consulting attorney instructed her to create a data backup system, which Ms. Ehler did not do. Ms. Ehler also did not assist the OCDC in reconstructing her financial records. Moreover, when asked by R.K. for an accounting of her trust account, Ms. Ehler did not prepare or provide the accounting.

The record also shows that Ms. Ehler mishandled client funds by failing to timely deliver funds to R.K. and H.M. Ms. Ehler received proceeds from the auction of the couple's marital property in July 2008. Ms. Ehler first paid herself, along with other creditors, in July 2008. R.K. received her first installment in September 2008. At that time, H.M. did not receive his portion of the proceeds. Although Ms. Ehler claims she sent H.M. a check that was not cashed, she did not reissue a check, present any evidence of such a check or make any effort to stop payment of any check, despite repeated requests from H.M.'s attorney that H.M. be paid. Ms. Ehler only paid R.K. and H.M. the remaining money in her client trust account after the OCDC directed her to pay

them in January 2009. Ms. Ehler failed to promptly deliver client funds, thereby violating Rule 4–1.15.

Ms. Ehler has also misappropriated client funds by paying her personal bills with funds from her client trust account. The OCDC's audit of the client trust account shows that in 2007–2008, Ms. Ehler had 12 withdrawals from the account to pay personal utility bills and office utility bills. The audit additionally shows that, as of January 2009, there should have been $2,104.82 in her trust account available to pay to H.M. and R.K. Paying personal expenses from a client trust account clearly is prohibited by Rule 4–1.15.

Ms. Ehler has not held her client's property "with the care required of a professional fiduciary." Rule 4–1.15, comment 1. She has mishandled her client trust account and misappropriated client funds. Her repeated Rule 4–1.15 violations alone warrant discipline.

## Violation of Rule 4–8.4

Rule 4–8.4 defines professional misconduct for which an attorney may be disciplined. Rule 4–8.4(a) states that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct." By violating rules of professional conduct, Ms. Ehler "has necessarily violated Rule 4–8.4(a)." *In re Caranchini*, 956 S.W.2d 910, 916 (Mo. banc 1997).

■ Ms. Ehler also has violated Rule 4–8.4(c) in the handling of her client trust account. Rule 4–8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Ms. Ehler knowingly used client funds to pay

---

**4.** Rule 4–1.15 was amended in 2009. The content of Rule 4–1.15(f) now is found in Rule 4–1.15(i).

for her personal expenses directly from her client trust account. Converting client funds necessarily involves deceit and misrepresentation. Therefore, she has violated Rule 4–8.4(c).

## Appropriate Discipline

This Court finds by a preponderance of the evidence that Ms. Ehler has committed the above violations of the rules, amounting to multiple acts of professional misconduct. Having determined that Ms. Ehler has committed multiple acts of professional misconduct, the remaining issue is the appropriate disciplinary sanction.

 The purpose of attorney disciplinary proceedings is "to protect the public and maintain the integrity of the legal profession." *Coleman,* 295 S.W.3d at 869. In imposing discipline, this Court considers the ethical duty violated, the attorney's mental state, the extent of actual or potential injury caused by the attorney's misconduct, and any aggravating or mitigating factors. *Id.* This Court looks to the ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS for guidance when imposing attorney discipline but considers the ABA STANDARDS advisory. *Id.*

 "The most important ethical duties are those obligations which a lawyer owes to clients." ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS 423 (1992). Those duties include safekeeping of client property, Rule 4–1.15; the duty of diligence, Rule 4–1.3 and Rule 4–1.4; the duty of competence, Rule 4–1.1; and the duty of candor, Rule 4–8.4(c). *Id.* Ms. Ehler knowingly has violated all of these rules, and her ethical violations have caused financial harm and hardship to her clients, R.K. and C.G., and to an opposing party, H.M., who had a settlement agreement with her client. Furthermore, "[m]isconduct involving subterfuge, failing to keep promises, and untrustworthiness under-

mine[s] public confidence in not only the individual but in the bar." *In re Donaho,* 98 S.W.3d 871, 874 (Mo. banc 2003). To protect the public and maintain the integrity of the profession, a substantial discipline must be imposed in these circumstances. *Id.*

 When this Court finds an attorney has committed multiple acts of misconduct, "the ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *Coleman,* 295 S.W.3d at 870 (internal citations omitted). Ms. Ehler's most egregious act of misconduct is her misappropriation of client funds and mishandling of her client trust account. Disbarment is appropriate for misappropriation of client funds. *Belz,* 258 S.W.3d at 41; *see also* ABA STANDARDS 4.11 ("Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."). In addition, "[d]isbarment is generally appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes serious are potentially serious injury to the client." ABA STANDARDS 4.41(c). Under these legal principles, disbarment would be the appropriate discipline for Ms. Ehler. Nonetheless, this Court will consider mitigating and aggravating factors. *Belz,* 258 S.W.3d at 42.

Factors suggested by the ABA STANDARDS that may be considered in aggravation relevant to Ms. Ehler's conduct are prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, and an indifference to making restitution. ABA STANDARDS 9.22. Ms. Ehler has prior disciplinary offenses of violating the rules governing diligence, communication, safekeeping of property, terminating representation and bar disci-

plinary matters. Her current offenses involve violation of three of the ethic rules for which she previously was disciplined.

Another aggravating factor is that Ms. Ehler's behavior shows a dishonest and selfish motive. She repeatedly converted client funds for her own personal use. Her current violations also evidence a pattern of misconduct and involve multiple offenses. She repeatedly has behaved with a lack of diligence and failed to provide competent representation to her clients. Regarding her representation of R.K., her failure to respond to the inquiries of her client and counsel for the opposing party shows a pattern of failure to communicate. Finally, her mishandling and misuse of her trust fund during 2007 and 2008 show a pattern of failure to properly maintain her trust account and deliver funds to clients promptly.

Ms. Ehler also has shown an indifference to making restitution, which is another aggravating factor. Ms. Ehler has known that she owes over $2,000 to H.M. and R.K. since she met with an attorney and investigator from the OCDC on January 29, 2009. As of oral arguments, 15 months later, she has made no effort to make restitution. While she claims personal financial problems preclude her from paying her clients their money, it is because of her misuse of her client funds that she lacks the money to pay her clients.

Ms. Ehler argues her personal problems should mitigate the severity of the punishment. Mitigating factors do not constitute a defense to a finding of misconduct. *Belz*, 258 S.W.3d at 42. Rather, these factors constitute "factors that may justify a reduction in the degree of discipline to be imposed." ABA STANDARDS 9.31. Although this Court acknowledges that Ms. Ehler's ongoing, acrimonious divorce and single parenting could tax her emotionally and financially, these facts do not excuse or condone Ms. Ehler's misappropriation of client funds. Her cooperation with the OCDC regarding the current violations is commendable, but, again, cooperation does not minimize the gravity of her offenses or the fact that she committed repeated and multiple violations of the rules of professional conduct that were very similar in nature to those for which her license was suspended and she was placed on a two-year term of probation. Consideration of the aggravating and mitigating circumstances weigh in favor of disbarring Ms. Ehler.

Moreover, the sanction of disbarment is also consistent with a progressive disciplinary scheme, which is recommended by the ABA STANDARDS and applied by this Court previously. *See generally* ABA STANDARDS. Ms. Ehler's license was suspended by this Court in 2005, her suspension was stayed, and she served a two-year term of probation. The purpose of probation is to educate, rehabilitate, and supervise the attorney in order to enable the attorney to modify his or her professional behavior. *See Coleman*, 295 S.W.3d at 871. Consistent with that general purpose, Ms. Ehler's two-year probation was intended to teach her how to manage her law practice—particularly, how to manage her client trust account. Ms. Ehler had the opportunity to be trained by a law management consultant and to have the advice and support of a mentor. Instead of learning from these opportunities, Ms. Ehler repeated the same acts of misconduct that warranted her stayed suspension and placement on probation. Most egregiously, Ms. Ehler withdrew money from her client trust account to pay personal expenses *while* she still was on probation for violating the same ethical rules for which she now is being disciplined.

### Conclusion

In 2005, Ms. Ehler received a six-month license suspension, which was stayed, and

a two-year term of probation for mishandling client funds and for lacking diligence in representing of clients. During her probation, she participated in law practice management training, which included instruction on how to manage her client trust account. Although not discovered during the term of her probation, she mishandled her client trust account and misappropriated client funds while on probation. Additionally, Ms. Ehler regrettably still does not understand the basics of competent and diligent representation. Under a progressive disciplinary scheme, Ms. Ehler's inability to improve her legal practice, her now habitual acts of professional misconduct, and the severity of those acts warrant disbarment. To protect the public and restore integrity to the profession, Ms. Ehler is disbarred.

All concur.