IN RE: Ryan J. MCMILLIN,
Respondent.

No. SC 96223

Supreme Court of Missouri,
en banc.

Opinion issued June 27, 2017

The chief disciplinary counsel's office was represented by Chief Disciplinary Counsel Alan D. Pratzel and Sam S. Phillips of the chief disciplinary counsel's office in Jefferson City, (573) 635-7400.

Charles W. Gotschall, special representative of the office and an attorney in Kansas City, (816) 561-2300.

McMillan was represented by Robert G. Russell of Kempton and Russell in Sedalia, (660) 827-0314.

Zel M. Fischer, Judge

The Office of Chief Disciplinary Counsel ("OCDC") filed an information in eight counts charging Ryan J. McMillin with numerous violations of the Rules of Professional Conduct. Following an evidentiary hearing, a disciplinary hearing panel recommended McMillin's law license be suspended indefinitely with no leave to apply for reinstatement for one year. The OCDC rejected the panel's recommendation and requested this Court suspend McMillin's license indefinitely with no leave to apply for reinstatement for three years or, alternatively, disbar McMillin. After briefing, argument, and *de novo* review of the record, this Court concludes McMillin has committed professional misconduct by violating Rules 4-1.3, 4-1.4(a), 4-1.5(a), 4-1.15(a)(5), 4-1.15(b), 4-1.15(c), 4-1.15(f), 4-1.16(d), 4-8.1(c), 4-8.4(a), 4-8.4(c), and 4-8.4(d). Considering the egregious nature of McMillin's misconduct, as well as both mitigating and aggravating factors, this Court orders McMillin disbarred.

## I. Findings of Fact and Conclusions of Law

 "Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed." *In re Coleman*, 295 S.W.3d 857, 863 (Mo. banc 2009) (internal quotations omitted). "This Court reviews the evidence *de novo*, independently determines all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law." *Id.* "This Court treats the panel's findings of fact, conclusions of law, and the recommendations as advisory." *Id.* "Moreover, this Court may reject any or all of the panel's recommendations." *Id.* The following findings and conclusions are based on this Court's review and McMillin's stipulations.

### A. Trust Account Misuse

McMillin was admitted to the Missouri bar in 1998. In May 2013, the OCDC received notice that McMillin's client trust account was overdrawn. The OCDC commenced an investigation, but McMillin failed to respond to the OCDC's initial request for bank records. After a second request, McMillin provided records. The OCDC received additional overdraft notifications in June 2013, and requested McMillin meet with the OCDC. The OCDC was concerned McMillin had a gambling addiction based on his transaction history. Believing McMillin needed monitoring to correct his trust account practices, the OCDC entered into a diversion agreement with him in September 2013. However, McMillin soon violated the terms of his agreement, as he failed to provide a quarterly report of his financial information and failed to respond to the OCDC's inquiries. The OCDC received additional overdraft notices in May and July 2014, and terminated the diversion agreement in August 2014. The OCDC continued to receive

overdraft notices in September, November, and December 2014.

The OCDC's investigation discovered McMillin was misusing three different trust accounts—essentially using them as personal accounts. He routinely made personal deposits to the trust accounts, thereby commingling personal funds with client funds; he made hundreds of cash withdrawals from the trust accounts, many of which occurred near gambling facilities; and he failed to keep trust account records, making it nearly impossible to determine whether he had earned advanced fees paid by clients before withdrawing the funds. Moreover, the further the investigation proceeded, the less McMillin cooperated. Despite this hampering of the OCDC's efforts, client complaints revealed that, on several occasions, McMillin indeed withdrew client funds he had not yet earned or never earned. In February 2014, he even paid his attorney enrollment fees from a trust account, which resulted in an overdraft. McMillin described his trust account practices as "awful" and "really horrible."

■ McMillin stipulates he has committed professional misconduct[1] in that he violated Rule 4-1.15 by commingling personal funds and client funds in his trust accounts, by making premature withdrawals from the trust accounts for earned fees, by making cash withdrawals from his trust accounts, and by failing to keep complete and accurate trust account records.[2] He also stipulates he violated Rule 4-8.1(c) by failing to respond to the OCDC's lawful demands for information. In addition to his stipulations, this Court concludes McMillin violated Rule 4-8.4(c), which prohibits "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation," because his misuse of the trust accounts included the misappropriation of client funds. *See In re Farris*, 472 S.W.3d 549, 557–58 (Mo. banc 2015). "When an attorney deposits the client's funds into an account used by the attorney for his own purposes, any disbursement from the account for purposes other than those of the client's interests has all the characteristics of misappropriation, particularly when the disbursement reduces the balance of the account to an amount less than the amount of the funds being held by the attorney for the client." *In re Schaeffer*, 824 S.W.2d 1, 5 (Mo. banc 1992). Misappropriation of "client funds necessarily involves deceit and misrepresentation." *In re Ehler*, 319 S.W.3d 442, 451 (Mo. banc 2010).

## B. Neglect of Clients

■ At the same time McMillin was misusing client trust accounts, he also failed to fulfill other substantial duties owed to several of his clients. Natalie Toney hired McMillin in February 2012 for representation in a domestic relations matter and paid him $3,000 in advanced fees. She was then unable to consistently communicate with him as he repeatedly either canceled scheduled meetings or refused to come out of his office to meet with her. Much of McMillin's limited interaction with Toney consisted of text messages he sent late at night containing inappropriate comments referring to Toney as "hot stuff" and "baby." McMillin admitted the majority of

---

1. Rule 4-8.4(a) provides it is professional misconduct to "violate or attempt to violate the Rules of Professional Conduct." McMillin's violations of other rules necessarily violates 4-8.4(a). *See Coleman*, 295 S.W.3d at 868.

2. Relevant here, Rule 4-1.15(a)(5) prohibits cash withdrawals from client trust accounts,

Rule 4-1.15(b) prohibits depositing personal funds in a client trust account except for paying bank service charges, Rule 4-1.15(c) prohibits withdrawal of client funds not yet earned, and Rule 4-1.15(f) requires complete recordkeeping for client trust accounts.

Toney's complaint "was probably true as far as me putting her off and not doing whatever, setting meetings and canceling." Toney eventually terminated McMillin and had to hire another attorney for an additional $3,000 to complete the matter. This Court concludes McMillin violated: (1) Rule 4-1.3 by failing to act with reasonable diligence and promptness in representing Toney; (2) Rule 4-1.4(a) by failing to keep Toney reasonably informed about the status of her matter and failing to promptly comply with reasonable requests for information; and (3) Rule 4-1.5(a) by charging a fee unreasonable in relation to the work he did for Toney.

◼ Jill Havenhill hired McMillin in December 2013 for representation in a domestic relations matter and paid him $1,000 in advanced fees. Havenhill thereafter attempted to contact McMillin. He responded in January 2014, apologizing for failing to contact her in a timely manner and promising to work on her case. After Havenhill did not hear from McMillin over the next several months, she terminated him and requested a refund of her fees because he had not done any work for her. McMillin did not oblige. This Court concludes McMillin violated: (1) Rule 4-1.3 by failing to act with reasonable diligence and promptness in representing Havenhill; (2) Rule 4-1.4(a) by failing to keep Havenhill reasonably informed about the status of her matter; (3) Rule 4-1.5(a) by charging a fee unreasonable in relation to the work he did for Havenhill; and (4) Rule 4-1.16(d) by failing to refund the fee paid by Havenhill upon termination of his representation.

◼ Charles White hired McMillin in February 2013 for representation in a domestic relations matter and paid him $3,000 in advanced fees. White then had little to no communication with McMillin, and White eventually discovered via Case. Net that his case was dismissed in June 2014. McMillin told White he would refile the case, but then failed to get the case reinstated. When White filed a complaint with the OCDC, McMillin did not respond to the OCDC's request for a response. McMillin stipulates he violated Rule 4-1.3 by failing to act with reasonable diligence and promptness in representing White, as well as Rule 4-8.1(c) by failing to respond to the OCDC's lawful demand for information. In addition to McMillin's stipulations, this Court concludes McMillin violated Rule 4-1.4(a) by failing to keep White reasonably informed about the status of his matter, and Rule 4-1.5(a) by charging a fee unreasonable in relation to the work he did for White.

◼ Larry Oliphant hired McMillin in February 2014 for representation in a domestic relations matter and paid him $750 in advanced fees. Following an important development in his case, Oliphant attempted to speak with McMillin by calling him "every day for two weeks." McMillin did not respond. After Oliphant filed a complaint, McMillin called Oliphant "screaming and hollering, cussing at [Oliphant], using a lot of profanity, told [Oliphant] he made $600 an hour, [and] that he didn't have to talk to [Oliphant]." McMillin then failed to appear at a hearing set for Oliphant's matter, and failed to notify Oliphant he was not going to appear. This Court concludes McMillin violated: (1) Rule 4-1.3 by failing to act with reasonable diligence and promptness in representing Oliphant; (2) Rule 4-1.4(a) by failing to keep Oliphant reasonably informed about the status of his matter and failing to promptly comply with reasonable requests for information; (3) Rule 4-1.5(a) by charging a fee unreasonable in relation to the work he did for Oliphant; and (4) Rule 4-8.4(d), engaging in conduct prejudicial to the administration of justice, by failing to appear at a hearing on Oliphant's behalf.

Harold Jordan hired McMillin in June 2013 for representation in a traffic case and paid him $350 in advanced fees. After McMillin failed to appear at a hearing on Jordan's behalf, a warrant was issued for Jordan's arrest. Jordan was later stopped and detained due to the warrant and was required to post a $400 bond for his release from custody. McMillin stipulates he violated Rule 4-1.3 by failing to act with reasonable diligence and promptness in representing Jordan, as well as Rule 4-1.4(a) by failing to keep Jordan reasonably informed about the status of his matter. In addition to McMillin's stipulations, this Court concludes McMillin violated Rule 4-1.5(a) by charging a fee unreasonable in relation to the work he did for Jordan, and Rule 4-8.4(d) by failing to appear at a hearing on Jordan's behalf.

## II. Analysis

"The purpose of attorney disciplinary proceedings is to protect the public and maintain the integrity of the legal profession." *Ehler*, 319 S.W.3d at 451 (internal quotations omitted). "In imposing discipline, this Court considers the ethical duty violated, the attorney's mental state, the extent of actual or potential injury caused by the attorney's misconduct, and any aggravating or mitigating factors." *Id.* "When this Court finds an attorney has committed multiple acts of misconduct, the ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *Id.* (internal quotations omitted). "Disbarment is typically reserved for clear cases of gross misconduct, those in which the attorney is demonstrably unfit to continue the practice of law." *In re Frank*, 885 S.W.2d 328, 334 (Mo. banc 1994).

### A. The Presumptive Discipline

"The most important ethical duties are those obligations which a lawyer owes to clients." *Ehler*, 319 S.W.3d at 451 (internal quotations omitted). As discussed, this Court concludes McMillin has violated several ethical duties owed to clients, including the duty to act diligently and the duty to communicate. "The diligent representation of a client is particularly important because [a] client's interests often can be adversely affected by the passage of time or the change of conditions[.]" *Id.* at 449 (internal quotations omitted). "In some instances, the client's legal position may be destroyed." *Id.* (internal quotations omitted). Moreover, "[c]ommunication with a client is essential to maintain a productive attorney-client relationship." *Id.* McMillin essentially abandoned his clients. His lack of diligence and communication undoubtedly caused his clients unnecessary delays, stress, and expense. He failed to advance his clients' matters while also routinely ignoring their efforts to communicate with him and shirking his duty to keep them apprised. One client was even arrested and taken into custody as a result of McMillin's dereliction. And when McMillin did communicate, he was inappropriate with one client and verbally abusive with another. One client described McMillin's behavior as "very dishonest" and stated she "felt very violated . . . nobody else should have to endure that." McMillin's disturbing pattern of client neglect could, alone, perhaps suffice to demonstrate he is unfit to continue the practice of law. *See Frank*, 885 S.W.2d at 334.

Ultimately, though, McMillin's "most egregious act of misconduct is [his] misappropriation of client funds and mishandling of [his] client trust account[s]." *Ehler*, 319 S.W.3d at 451. On several occasions, McMillin withdrew funds from advanced fees deposited in his trust accounts that he had not yet earned or never earned. "[D]isbarment constitutes the 'baseline sanction' for misappropriation."

*Farris*, 472 S.W.3d at 562. Put another way, "disbarment is the presumptively appropriate discipline for misappropriating client funds." *Id.* at 563. As this Court has explained, disbarment is presumptively appropriate because "[t]here simply is no room in this profession for attorneys who take property held in trust for others and use it as their own." *Id.* at 562. "When a lawyer misappropriates property belonging to a client or a third party, that lawyer breaches one of the fundamental duties of this profession. Doing so not only injures the property owner, but also the Bar as a whole." *Id.* at 566. Although disbarment is presumptively appropriate for McMillin's violations, this Court must also consider both mitigating and aggravating factors. *Id.* at 563.

### B. Mitigating Factors

■ "Mitigating factors do not constitute a defense to a finding of misconduct. But they may justify a downward departure from the presumptively proper discipline." *Id.* (internal citation omitted). McMillin claims his misconduct stems from a mental disorder, namely chemical dependency and abuse pertaining to alcohol and cocaine. At the evidentiary hearing, an independent, licensed psychologist testified McMillin's mental disorders[3] were "completely responsible" for his misconduct. McMillin testified he has not used drugs or alcohol since August 2015. Pursuant to Rule 5.285, this Court takes McMillin's mitigation claim under consideration. In addition, this Court notes McMillin's lack of prior disciplinary history and his ex-

pressed remorse for his misconduct. *See In re Belz*, 258 S.W.3d 38, 46 (Mo. banc 2008).

### C. Aggravating Factors

■ "[A]n aggravating factor need not constitute a separate instance of misconduct. Instead, aggravating circumstances may justify a level of discipline greater than the presumed discipline or confirm that the presumed discipline is appropriate for the particular case." *Farris*, 472 S.W.3d at 563. This Court finds five aggravating factors. First, "a dishonest or selfish motive" is an aggravating factor. *Id.* at 565. As noted, McMillin's misappropriation of client funds necessarily involves dishonesty. Second, this case involves multiple patterns of misconduct. *See id.* McMillin's misuse of his client trust account was his regular practice, not an isolated misstep, and persisted even after the OCDC gave him an opportunity at diversion. At the same time, he demonstrated a pattern of neglecting his duties of communication and diligence in his representation of clients. Third, there are "multiple offenses" here. *See id.* As detailed above, this Court concludes McMillin has committed a variety of rules violations. Although the presumptive discipline of disbarment is based on McMillin's misappropriation of client funds, this Court must also give due weight to the fact McMillin committed many other serious violations by essentially abandoning multiple clients. Fourth, McMillin demonstrated a "bad faith obstruction of the disciplinary proceeding" as he repeatedly ignored the OCDC's requests for information and was uncoopera-

---

**3.** In addition to chemical dependency and abuse, the psychologist diagnosed McMillin with major depression, generalized anxiety disorder, and personality disorder unspecified. McMillin's answer to the OCDC's information, however, identified only chemical dependency and abuse as a mental disorder for purposes of his mitigation claim. "A person claiming a mental disorder as a mitigating

factor shall identify the mental disorder and how it relates to the alleged professional misconduct no later than in the answer or amended answer." Rule 5.285(b). Nevertheless, even considering the mental disorders not pleaded as mitigation and accepting the expert testimony offered on his behalf as true, it does not change the appropriate sanction in this case.

tive in the OCDC's investigation. *See id.* Finally, "substantial experience in the practice of law" is considered an aggravating factor. *See id.* at 566. McMillin has been practicing law in Missouri since 1998.

### III. Conclusion

The presumptive discipline for McMillin's gross misconduct is disbarment. "[I]n a rare but appropriate case a sanction other than disbarment may be appropriate for intentional misrepresentation where mental illness is shown to have played a role in the misconduct and other substantial mitigating factors are also present." *Id.* at 567 (internal quotations omitted). This is no such case. Even accepting as true McMillin's mitigation claim of a mental disorder, there are no other *substantial* mitigating factors and this Court cannot ignore the number of aggravating factors that effectively offset, if not overwhelm, any mitigation. The aggravating factors confirm "there is no reason to depart from the presumptive discipline of disbarment in this case." *Id.* at 566. Therefore, this Court orders McMillin disbarred.

All concur.