

# SUPREME COURT OF MISSOURI
## en banc

|  |  |
|---|---|
| In re: JAMES T. CRUMP, | ) *Opinion issued May 14, 2024* |
|  | ) |
| Respondent. | ) No. SC100343 |
|  | ) |
|  | ) |

### ORIGINAL DISCIPLINARY PROCEEDING

The Office of Chief Disciplinary Counsel ("OCDC") seeks to discipline James T. Crump for multiple violations of the Rules of Professional Conduct resulting from his management of two client trusts and his IOLTA account. Following an evidentiary hearing, a disciplinary hearing panel ("DHP") recommended Crump be suspended without leave to apply for reinstatement for three years. Both Crump and OCDC rejected the DHP's recommendation. Crump requests this Court impose a stayed suspension with a period of probation, while OCDC recommends this Court disbar Crump. This Court concludes Crump has committed professional misconduct by violating Rules 4-1.7(a), 4-1.8(a), 4-1.15(a), 4-1.15(a)(6), 4-1.15(a)(7), 4-1.15(b), 4-1.15(c), 4-8.4(c), and 4-8.4(d).[1] Considering the nature of Crump's conduct, as well as mitigating and aggravating factors, this Court orders Crump disbarred.

---

[1] All rule references are to Missouri Court Rules (2022).

## Factual Background and Procedural History

Crump received a bachelor's degree in accountancy from the University of Missouri in 1994. Crump was licensed to practice law in Missouri in October 1997 and has no prior disciplinary history.

Crump's practice primarily consists of estate planning and probate work. He has served as municipal judge for the city of Rolla for the past 11 years. Crump owns a business, Caveat Emptor, L.L.C, which holds a piece of property on Highway 72. Crump was the sole shareholder, officer, and board member of his law firm, James T. Crump P.C. The Missouri Secretary of State dissolved James T. Crump, P.C., in January 2012 following the entity's failure to pay state employee withholding taxes.

Crump's client, C.G., was the trustee for two trusts: the C.G. Trust and H.G. Trust (collectively, "client trusts"). H.G. was C.G.'s wife. C.G. made Crump the successor trustee to both trusts.

In 2010, C.G. made a loan to Crump's business, Caveat Emptor, from the H.G. Trust in the amount of $80,760.95 secured with a deed of trust for a property on Highway 72 (the "Highway 72 loan"). In 2013, C.G. made a second loan from the C.G. Trust to Crump and his wife in the amount of $175,000 secured with a deed of trust for a property in Scottsvale (the "Scottsvale loan").

After C.G. died in 2015, H.G. became the lifetime beneficiary of the C.G. Trust, and Crump became the trustee for both client trusts. At the time of C.G.'s death, Crump was current on loan payments for the Highway 72 loan and Scottsvale loan. In

2016, H.G. was legally determined to be incapacitated, and one of her daughters was appointed her guardian.

In addition to the loans C.G. made to Crump and his business, C.G. made several other loans from the C.G. Trust during his lifetime. At the time of C.G.'s death, the client trusts had approximately $1 million in outstanding loans.

Crump had developed an accounting system in which he would place earned funds from his law firm, funds belonging to the client trusts, and funds from clients in the same IOLTA account. Crump used an accounting program to create subfolders within the IOLTA account, instead of maintaining separate IOLTA and operating accounts.[2]

Crump would transfer money from client subfolders to his firm subfolder to pay his earned fees. Similarly, Crump would transfer money from his firm subfolder to the client trusts subfolder to make payments on the Highway 72 loan and Scottsvale loan.[3]

In 2017 Crump made two loans to himself from the client trusts (the "2017 loans"). In May 2017, Crump loaned himself $42,383.70 by moving money from the client trusts subfolder to the law firm subfolder to pay overdue payroll taxes. In December 2017, Crump made a second loan of $18,292.88 from the client trusts

---

[2] Because of the way Crump set up his accounting system, this opinion will refer to different "subfolders" of Crump's IOLTA account. While Crump described each subfolder as a different "account," all of the funds were comingled in the *same* IOLTA account. Crump used a computer program to keep track of the balance of each subfolder within the IOLTA account.

[3] At times, the client trusts subfolder held up to $800,000 but did not earn any interest because Crump failed to move the funds from his IOLTA account to an interest-bearing account.

subfolder to the law firm subfolder to pay federal payroll taxes. Crump did not inform H.G., her guardian, or any other beneficiaries that he made either loan. Crump created a promissory note and security agreement for each loan.[4] Without a witness present, Crump signed the note and security agreement related to each loan but never perfected either security agreement.

H.G. died in August 2019. After H.G.'s death, the client trusts were to be terminated and the assets distributed to the beneficiaries. As trustee, it was Crump's responsibility to disburse the assets.

In May 2020, Crump sent a letter to the beneficiaries listing the outstanding loans made by C.G. from the client trusts. Crump included the Highway 72 loan and Scottsvale loan in the list but did not disclose the 2017 loans. Crump falsely reported the status of the Highway 72 loan was "current" and attached a payment ledger reflecting interest payments made to the Scottsvale loan from 2016 to 2020. The payment ledger for the Scottsvale loan was false. Crump reported the payments he had made on the 2017 loans as payments on the Highway 72 loan. While Crump had made sporadic principal payments on the Scottsvale loan after C.G.'s death in 2015, Crump had not made interest payments on the Scottsvale loan since C.G.'s death.

---

[4] Both 2017 loan promissory notes had two-year terms with interest payable monthly at 6.5 percent. If interest was not paid monthly, it would become principal with a 6.5-percent interest rate. Crump stated the collateral for the loan was the "goods, inventory, accounts, chattel paper, instruments, general intangibles, negotiable documents, and non-negotiable documents" of James T. Crump, P.C.

Crump testified he did not report the 2017 loans because he thought he had repaid those. Crump, however, had paid only about $34,000 of the $60,676.58 balance.

In July 2020, Crump sent the beneficiaries a second letter that failed to disclose the 2017 loans. The day before sending the second letter, Crump moved $51,870.72 from his operating subfolder to the client trusts subfolder to pay the interest on the Scottsvale loan.

Four of the beneficiaries hired an attorney ("Counsel") to assist them in reviewing documents necessary to close the client trusts. Counsel sent a letter to Crump in January 2021 requesting documents he needed to review the client trusts. Crump testified he stalled Counsel for a while.

Before responding to Counsel and disclosing the existence of the 2017 loans, Crump recharacterized payments in his records so he could report to Counsel the 2017 loans were repaid. Crump moved payments he had previously made on the Highway 72 loan and Scottsvale loan and applied them to the 2017 loans. By moving the payments he made on the Highway 72 loan and Scottsvale loan to the 2017 loans, Crump created an arrearage. Recharacterizing the payments resulted in no monthly payments being recorded in Crump's records on the Scottsvale loan from October 2015 until January 2020, with the exception of three interest payments in 2017. The recharacterization also resulted in Crump's records showing no monthly payments made on the Highway 72 loan from October 2015 to July 2020, with the exception of three interest payments.

Crump then spoke to Counsel and said he had mistakenly believed he was current on the Highway 72 loan and Scottsvale loan but had discovered this was incorrect and

5

both were in arrearages. Crump disclosed the 2017 loans to Counsel and said those loans were repaid.[5] If Crump had not recharacterized previous payments prior to speaking with Counsel, the 2017 loans would have had a balance of more than $25,000. Counsel filed a complaint against Crump with OCDC.

Crump resigned as trustee of the client trusts in February 2021. The Scottsvale loan was paid off in April 2021 after Crump refinanced it through a credit union. The Highway 72 loan was paid off in March 2022 through a loan from Crump's father.

OCDC opened an investigation and conducted an audit of Crump's IOLTA account. The audit report found:

- Crump had made more than 40 transfers from his firm subfolder to the client trusts subfolder within his IOLTA account;

- Crump paid several personal or operating expenses directly from his IOLTA account;

- The firm subfolder remained in a deficit balance for approximately three months as a result of Crump writing an operating check from the IOLTA account;

- When clients gave Crump cash, he would keep the cash in his office and replace the cash payments by writing a check from Caveat Emptor, L.L.C., to his IOLTA account; and,

- Several client subfolders had deficit balances for short periods due to Crump mistakenly disbursing funds before they were deposited.

---

[5] Crump told an OCDC investigator he had paid the 2017 loans in July 2020. Crump did not recharacterize the Highway 72 loan and Scottsvale loan payments as 2017 loan payments, however, until January 2021.

As part of OCDC's investigation, Crump submitted letters attesting to his good character and involvement with several charitable organizations. Crump testified he would not serve as a trustee again.

In its decision, the DHP found Crump violated Rules 4-1.7(a), 4-1-1.8, 4-1.15(a), 4-1.15(a)(6), 4-1.15(a)(7), 4-1.15(b), 4-1.15(c), 4-8.4(c), and 4-8.4(d). The DHP recommended Crump be suspended without leave to apply for reinstatement for three years.

Both Crump and OCDC rejected the DHP's recommendation. Crump now asks this Court for a stayed suspension with a period of probation. OCDC recommends this Court disbar Crump.

### Findings of Fact and Conclusions of Law

"This Court has inherent authority to regulate the practice of law and administer attorney discipline." *In re Neill*, 681 S.W.3d 194, 197-98 (Mo. banc 2024) (internal quotation omitted). "Professional misconduct must be proven by a preponderance of the evidence before discipline will be imposed." *Id.* at 198 (internal quotation omitted). "This Court reviews the evidence *de novo*, independently determines all issues pertaining to credibility of witnesses and the weight of the evidence, and draws its own conclusions of law." *Id.* (internal quotation omitted). "The DHP's findings of fact, conclusions of law, and recommendations are advisory." *In re Gardner*, 565 S.W.3d 670, 675 (Mo. banc 2019). "[T]his Court may reject any or all of the panel's recommendations." *In re McMillin*, 521 S.W.3d 604, 607 (Mo. banc 2017) (internal quotation omitted).

7

## Crump's Conduct

Based on the record, this Court finds Crump committed multiple violations of the Rules of Professional Conduct: [6]

### *Rule 4-1.7(a)*

Rule 4-1.7(a) provides a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. Crump violated Rule 4-1.7 by loaning himself money from the client trusts for his personal use and failing to make interest payments on the Scottsvale loan, to the detriment of the beneficiaries.

### *Rule 4-1.8(a)*

Rule 4-1.8(a) prohibits a lawyer from entering into a business transaction with a client unless there is full disclosure of the transaction and terms, the client is advised of the desirability of seeking legal advice, and the client gives informed consent. Crump violated Rule 4-1.8(a) by failing to disclose the 2017 loans to H.G.'s guardian or any other beneficiary. Crump further violated this rule by failing to obtain informed consent from H.G.'s guardian or any other beneficiary.

### *Rule 4-1.15*

Crump violated various subsections of Rule 4-1.15 by mismanaging his IOLTA account. Several violations stem from Crump comingling client funds with personal funds in his IOLTA account, rather than maintaining separate accounts.

Rule 4-1.15(a) states:

---

[6] Crump concedes he violated Rules 4-1.7(a), 4-1.8(a), 4-1.15(a), 4-1.15(b), 4-1.15(c), and 4-8.4(c). Crump disputes he violated Rules 4-1.8(b) and 4-8.4(d).

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Client or third party funds shall be kept in a separate account designated as a "Client Trust Account" or words of similar import maintained in the state where the lawyer's office is situated or elsewhere if the client or third person consents.

Crump violated Rule 4-1.15(a) because he comingled personal funds with client funds by depositing money from his Caveat Emptor business into his IOLTA account and by paying personal and law firm operating expenses from the IOLTA account.

Rule 4-1.15(a)(6) specifies a lawyer shall not make a disbursement upon deposit "if the lawyer has reasonable cause to believe the funds have not actually been collected by the financial institution in which the trust account is held." Crump violated Rule 4-1.15(a)(6) by making disbursements from the IOLTA account before the financial institution had collected the funds, resulting in deficits in the IOLTA account's client subfolders.

Rule 4-1.15(a)(7) provides "[a] reconciliation of the account shall be performed reasonably promptly each time an official statement from the financial institution is provided or available." Crump violated this rule by failing to promptly reconcile his trust account each time a statement from the financial institution was provided or available.

Rule 4-1.15(b) states "[a] lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying financial institution service charges on that account, but only in amount necessary for that purpose." Crump violated this rule because he comingled his personal funds with client funds by depositing Caveat Emptor checks into his IOLTA account for purposes other than bank service charges.

9

Rule 4-1.15(c) provides:

a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred, except that an advanced flat fee which does not exceed $2,000 is exempted from this requirement and may be deposited into another account.

Crump violated this rule because he failed to keep a separate client trust account, instead transferring fees from client subfolders to his law firm subfolder within his IOLTA account and making payments toward client trust loans by transferring funds from the firm subfolder to the client trusts subfolder within his IOLTA account.

### Rule 4-8.4(c)

Pursuant to Rule 4-8.4(c), "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Crump violated this rule by secretly loaning himself money from the client trusts. Crump failed to inform the beneficiaries of the 2017 loans before they were made and did not disclose the 2017 loans in his letters to the beneficiaries following H.G.'s death. Crump violated Rule 4-8.4(c) by misrepresenting the payments he previously made on the loans through recharacterizing payments. Finally, Crump violated this rule by falsely representing he made interest payments on the Scottsvale loan even though his recharacterization resulted in the loan being in arrearage.

### Rule 4-8.4(d)

Rule 4-8.4(d) provides "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." Crump violated this rule by failing to inform the beneficiaries of the 2017 loans and falsely representing he paid

10

interest payments on the Scottsvale loan. Crump's behavior caused a delay in the beneficiaries receiving money from the client trusts, caused the beneficiaries to hire additional legal counsel, and harmed the integrity of the legal profession. *See In re Purdy*, 661 S.W.3d 796, 800 (Mo. banc 2023) (finding an attorney violated Rule 4-8.4(d) by placing his own interests above his clients' legal needs).

## Appropriate Discipline

Because this Court has found by a preponderance of the evidence Crump violated Rules 4-1.7(a), 4-1.8(a), 4-1.15(a), 4-1.15(a)(6), 4-1.15(a)(7), 4-1.15(b), 4-1.15(c), 4-8.4(c), and 4-8.4(d), this Court must determine the appropriate discipline to impose.

"This Court has inherent authority to regulate the practice of law and administer attorney discipline." *Purdy*, 661 S.W.3d at 800 (internal quotation omitted). "The purpose of attorney disciplinary proceedings is to protect the public and maintain the integrity of the legal profession." *McMillin*, 521 S.W.3d at 610 (internal quotation omitted).

This Court considers its prior cases and the American Bar Association's Standards for Imposing Lawyer Sanction (1992) ("ABA Standards") when determining the appropriate discipline. *Purdy*, 661 S.W.3d at 801. "Generally, when considering what sanction to impose, this Court considers four factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *Id.* (internal quotation omitted).

11

"Once misconduct is established, this Court may consider aggravating and mitigating factors when deciding what sanction to impose." *Id.* "Mitigating factors do not constitute a defense to a finding of misconduct." *In re Farris*, 472 S.W.3d 549, 563 (Mo. banc 2015). The presence of mitigating factors "may justify a downward departure from the presumptively proper discipline." *Id.*

The Court finds several mitigating factors are present.[7] Crump has no prior disciplinary record. ABA Standard 9.32(a). He cooperated with the disciplinary proceeding. ABA Standard 9.32(e). He submitted letters attesting to his good character and fitness to practice law. ABA Standard 9.32(g). Crump also showed remorse for his conduct. ABA Standard 9.32(l).

This Court also finds there are several aggravating factors. "[A]n aggravating factor need not constitute a separate instance of misconduct. Instead, aggravating circumstances may justify a level of discipline greater than the presumed discipline or confirm that the presumed discipline is appropriate for the particular case." *McMillin*, 521 S.W.3d at 611 (alteration in original). Crump had a dishonest or selfish motive when he took money from the client trusts. ABA Standard 9.22(b). He established a pattern of

---

[7] This Court is not compelled by other mitigating factors Crump presented. Although he claimed he made a timely, good-faith effort to make restitution, any repayment was made after Crump's conduct was reported to OCDC. Further, Crump did not make any payments on the 2017 loans until contacted by an attorney, at which point Crump recharacterized former loan payments. Crump's repayment, therefore, was neither timely nor made in good faith. Crump also raised confidential mitigating factors pursuant to Rule 5.285. This Court, however, finds Crump failed to establish the confidential mitigating factors related to his misconduct.

misconduct by making himself multiple loans and repeatedly failing to make required payments. ABA Standard 9.22(c). Crump also committed multiple offenses. ABA Standard 9.22(d). In addition, H.G. was a vulnerable victim. ABA Standard 9.22(h). Finally, Crump has substantial experience in the practice of law. [8] ABA Standard 9.22(i).

"When this Court finds an attorney has committed multiple acts of misconduct, the ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among the violations." *McMillin*, 521 S.W.3d at 610 (internal quotation omitted).

The presumptive discipline for several of Crump's violations is disbarment:

- "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA Standard 4.11.

- "Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer ... and causes serious injury or potential serious injury to a client." ABA Standard 4.61.

- "Disbarment is generally appropriate when ... a lawyer engages in ... intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.11(b).

---

[8] Crump holds an undergraduate degree in accountancy and used his specialized skill to set up his own accounting method using subfolders within his IOLTA. An attorney's degree of experience is considered an aggravating factor by ABA Standard 9.22(i). While not listed as an aggravating factor by the ABA Standards, this Court notes Crump's misconduct is further aggravated because he had substantial experience in accountancy and the rules he violated were related to his accountancy practices.

Because Crump loaned himself money from the client trusts without the knowledge or approval of H.G., H.G.'s guardian, or the beneficiaries, the presumptive discipline is disbarment pursuant to ABA Standards 4.11 and 4.61. Because Crump did not disclose the 2017 loans or seek the beneficiaries' approval, falsely reported interest payments on the Scottsvale loan, and recharacterized multiple loan payments, the presumptive discipline is disbarment pursuant to ABA Standards 4.61 and 5.11(b). The evidence reflects not just a single incident of intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice, but a pattern of such conduct. Under this Court's precedent, "[d]isbarment is the presumptively appropriate discipline for misappropriating client funds." *Farris*, 472 S.W.3d at 563.

Crump argues, given mitigating factors in this case, this Court should depart from the presumptive discipline and grant him a stayed suspension with a period of probation. A lawyer, such as Crump, committing acts warranting disbarment, however, is ineligible for probation under Rule 5.225(a)(2)(C). *Neill*, 681 S.W.3d at 199.

"[T]his Court [has] held that misappropriation of client funds is a grave matter and most often warrants disbarment." *Farris*, 472 S.W.3d at 567 (internal quotation omitted). Only when compelling mitigating factors were present has this Court only suspended an attorney for misappropriating client funds. *In re Belz*, 258 S.W.3d 38, 47 (Mo. banc 2008). Examples include: the attorney's mental illness, repaying all misappropriated funds with interest, self-reporting the conduct to OCDC, and fully disclosing the

14

misconduct to all affected clients. *Id.* at 46-47. None of these mitigating factors are present here.[9]

"Disbarment is typically reserved for clear cases of gross misconduct, those in which the attorney is demonstrably unfit to continue the practice of law." *McMillin*, 521 S.W.3d at 610 (internal quotation omitted). Crump violated multiple professional rules for which the presumptive discipline was disbarment, his misconduct is aggravated by several factors, and no compelling mitigating factors exist to justify departing from the presumptive discipline.

## Conclusion

This Court orders Crump disbarred.

_____
KELLY C. BRONIEC

All concur.

_____

[9] This Court has previously disbarred an attorney for repeated financial misappropriation when mitigating factors included charitable and community involvement, remorse, cooperation with disciplinary authorities, and personal and emotional issues. *In re Kayira*, 614 S.W.3d 530, 538-39 (Mo. banc 2021). Similar mitigating factors are present here as in *Kayira*. "Such mitigating evidence, however, must be weighed against the seriousness of the offenses and the evidence in aggravation." *Id*. at 539. Similar to *Kayira*, the seriousness of Crump's misconduct is not outweighed by the mitigating factors.